HOGUE et al. *v.* PALUXY ASPHALT COMPANY et al.

No. 41769        May 29, 1961       130 So. 2d 849

*Satterfield, Shell, Williams & Buford,* Jackson; *Bridg-forth & Love,* Yazoo City, for appellants.

576

*Wells, Thomas & Wells,* Jackson; *Henry & Barbour, John Sharp Holmes,* Yazoo City, for appellees.

Jones, J.

Prior to December 24, 1955, J. Herbert Hogue, Anne Hogue Darrington and Sarah Hogue Barbour had executed four lease agreements in favor of Paluxy Asphalt Company, a corporation, leasing to them for a specified term four separate tracts of land which were adjacent except for a public highway which traversed same. On these tracts Paluxy had erected a refinery. On October 24, 1955, each of these leases was renewed or extended for a period of fifteen years from February 14, 1956.

Each of the four leases contained the following provision:

"This property is leased and conveyed to the lessee for the purpose of erecting and operating an oil refinery, including the erection of buildings for housing trucks and automobiles used in connection with the lessee's oil refinery, and continued use of such

buildings for said purposes shall be considered a part of the operation of said refinery, and in the event the lessee discontinues and abandons said operations, this lease shall thereupon terminate and expire.''

On October 4, 1950, the same parties executed in favor of the same Company a lease containing two separate tracts, one consisting of 31.16 acres and the other of 8.59 acres (designated in the lease as tract No. 1 and tract No. 2, respectively) for a term of fifteen years from February 14, 1956.

This last lease will hereinafter be referred to as the ''E'' lease because a copy of it was attached as Exhibit E to the complaint hereinafter mentioned, and the first four leases, all being similar in character, will be called the ''four leases''.

The ''E'' lease contained the following provisions:

''4. It is agreed that the leased premises are leased and let exclusively to second party for the sole purpose of transporting, storing, refining and marketing crude oil and its products; and, in connection with such operations, it is understood and agreed that second party may make any necessary and proper erections, improvements or excavations necessary therefor (excavations for a disposal pit for water and other waste products whether deleterious or not, coming from the normal operations of such refinery, but limited to Tract No. 2 above described) and of housing its employees thereon. Further, it is agreed that such use shall extend to the benefit of second party, Paluxy Asphalt Company, and/or its affiliates or associates engaged in any phase of the aforementioned operations; and that, specifically subject to the terms of this lease, second party may sub-lease or sub-let a portion of such premises to outside parties performing any portion of the aforementioned operations.

''5. The second party agrees that it will so use the leased premises as not to damage or affect in any way

the adjoining lands of the first parties and will prevent any water, oil and all other waste products in said disposal pit from flowing on or from otherwise reaching the adjoining lands or nearby lands of first parties; and a breach of its covenant to so use the land shall authorize first parties at their election to terminate this contract and authorize reentry or to sue second party for damages for the breach thereof; and it is agreed that this clause shall be binding upon the assignees and successors of all parties hereto and construed a covenant running with the leasehold.''

On October 1, 1950, Paluxy Asphalt Company subleased to the Southland Company, a joint venture, a portion of the leased lands.

On February 22, 1959, the lessors, by their attorneys, gave written notice to Paluxy Asphalt Company, Mr. E. Constantine, Jr., and Mr. Charles W. Else, both of whom were partners in the Southland Company, that the ''four leases'' above mentioned had terminated or expired, alleging that the Company had discontinued and abandoned the operation of the oil refinery located upon said property.

The lessors later filed suit in the chancery court asking cancellation of the ''four leases'' and also seeking to cancel the ''E'' lease on the ground that the provisions thereof, above quoted, had been violated. They also filed ejectment suits in the county court. The chancery court case was later dismissed.

Thereupon, Paluxy Asphalt Company, a corporation, and E. Constantine, Jr., Charles W. Else and Gilbert L. Bright, partners operating as the Southland Company, filed suit against the lessors seeking to quiet and confirm the leasehold interests conveyed by the leases above mentioned and also demanding damages for slander of title.

The lessors answered alleging a breach of the lease provisions hereinbefore mentioned and denying that the

lessees were entitled to have their leasehold interest in either of said leases confirmed. Much testimony was taken both in an effort to prove such breaches and to show that there had been no such breaches.

After hearing the evidence, the special chancellor made a special finding of fact in which he held, as to the "four leases":

"There was no discontinuance or abandonment of oil refinery operations on the leased premises as to cause the leases to be terminated."

There was ample evidence to sustain this finding of fact. He further found, as to the "E" lease:

"The petroleum products on the lands of the Defendants to the West of the 8½-acre tract included in the 'E' lease (Exhibit 'E' to the Bill of Complaint herein) came from a source not that of the 'E' lease itself, and that petroleum products were on the 'E' lease itself, outside the pit, prior to the execution of the lease."

Appellants' evidence on the issue as to the "E" lease was devoted principally to an effort to establish that waste products from the lagoon or disposal pit erected on the 8.59 acres covered by the "E" lease were seeping, leaking, or being permitted to enter upon adjacent land of the lessors thereby damaging same. Much proof was taken pro and con on this issue and the chancellor found against the lessors and the lessors who are appellants here concede that there was sufficient evidence to sustain this finding.

Appellants insist, nevertheless, the evidence shows the petroleum products which were upon appellants' land came there in violation of the condition or provision above quoted.

Tract 1 covered by the "E" lease was adjacent to that part of the "four-lease" property east of U. S. Highway No. 3. Tract 2 of the "E" lease was some little distance west of that part of the "four leases"

west of the highway. The railroad loading tracks, right-of-way for another highway and the main lines of the railroad were between tract No. 2 and the other lands covered by the five leases. The loading racks and the other property were higher than the lands covered by tract 2.

The testimony showed, and the chancellor was justified in holding, that petroleum products on the lands of lessors west of tract No. 2 came from a source other than the lands covered by the "E" lease, and although some of such products came upon the lands in tract 2 by subterranean route and portions thereof gravitated in spite of efforts by appellees to minimize and prevent same, under appellants' farm land, that such occurrence was not within the contemplation of the parties and was not within the provisions or condition above quoted. There was also evidence to support the chancellor's finding that petroleum products were on said tract No. 2, outside the pit, before the lease was executed.

The chancellor further found that the appellees were not entitled to damages for slander of title, and there was no cross-appeal.

He entered a final decree quieting and confirming the interests of the appellees (including certain holders of deeds of trust who had intervened) in and to the leasehold interests and to the properties which had been placed or erected by Paluxy and Southland thereupon.

The chancellor was justified by the evidence in his finding and in the decree and the case is therefore affirmed.

Affirmed.

*Lee, P.J.,* and *Gillespie, McElroy* and *Rodgers, JJ.,* concur.